1

2

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

3

4

5

6

7

8

9

10

11

| | |
|---|---|
| ANNETTE E. TRIERWEILER, | No. CV-13-339-JPH |
| Plaintiff, | ORDER GRANTING |
| vs. | DEFENDANT'S MOTION FOR |
| CAROLYN W. COLVIN, Acting | SUMMARY JUDGMENT |
| Commissioner of Social Security, | |
| Defendant. | |

12

13

14

        BEFORE THE COURT are cross-motions for summary judgment. ECF No.
16, 18. The parties have consented to proceed before a magistrate judge. ECF No.
7. After reviewing the administrative record and the parties' briefs, the court
**grants** defendant's motion for summary judgment, **ECF No. 18**.

15

### JURISDICTION

16

17

18

19

        Plaintiff applied for disability insurance benefits (DIB) and supplemental
security income (SSI) benefits on July 7, 2007, alleging onset beginning January 2,
2003 (Tr. 237-45). Benefits were denied initially and on reconsideration (Tr. 152-
58, 165-68). ALJ Robert S. Chester held a hearing April 7, 2009. No medical
experts testified (Tr. 53-77). A different ALJ, James W. Sherry, held a
supplemental hearing after remand August 16, 2011. Medical and psychological

ORDER - 1

experts testified (Tr. 81-128). November 4, 2011, ALJ Sherry issued an unfavorable decision (Tr. 23-37). The Appeals Council denied review July 25, 2013 (Tr. 1-5). September 23, 2013, Plaintiff filed this action for judicial review pursuant to 42 U.S.C. § 405(g). ECF No. 1, 5.

## STATEMENT OF FACTS

The facts have been presented in the administrative hearing transcripts, the decisions of the ALJ and the parties' briefs. They are only briefly summarized as necessary to explain the court's decision.

Plaintiff was 33 years old at onset. She has an eleventh grade education and has not earned a GED. She has worked as a cashier and stocker, personal companion and pharmacy technician. She last worked in 2002 or 2003. She alleges disability based on interstitial cystitis (IC, a bladder disease), irritable bowel syndrome (IBS), fibromyalgia, migraine headaches, depression and anxiety. She is able to sit 15-20 minutes, stand 5 minutes, walk less than a block and lift five to seven pounds. On appeal she alleges the ALJ erred when he weighed the evidence (Tr. 56-64, 120-22, 261-63, 266, 291, 296, 810).

## SEQUENTIAL EVALUATION PROCESS

The Social Security Act (the Act) defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423 (d)(1)(A), 1382c(a)(3)(A). The Act also provides that a plaintiff shall be determined to be under a disability only if any impairments are of such severity that a plaintiff is not only unable to do previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423 (d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both

1   medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156

2   (9th Cir. 2001).

3       The Commissioner has established  a five-step sequential evaluation process

    or determining whether a person is disabled. 20 C.F.R. §§  404.1520, 416.920. Step

4   one determines if the person is engaged in substantial gainful activities. If so,

5   benefits are denied. 20 C.F.R. §§  404.1520(a)(4)(i), 416.920(a)(4)(i). If not, the

6   decision maker proceeds to step two, which determines whether plaintiff has a

    medically severe impairment or combination of impairments. 20 C.F.R. §§

7   404.1520(a)(4)(ii), 416.920(a)(4)(ii). If plaintiff does not have a severe impairment

    or combination of  impairments, the disability claim is denied.

8       If the impairment is severe, the evaluation proceeds to the third step, which

9   compares plaintiff's impairment with a number of listed impairments

    acknowledged by the Commissioner to be so severe as to preclude substantial

10  gainful activity. 20 C.F.R. §§  404.1520(a)(4)(iii), 416.920(a)(4)(iii); 20 C.F.R.

11  §404 Subpt. P App. 1. If the impairment meets or equals one of the listed

    impairments, plaintiff is conclusively presumed to be disabled. If the impairment is

12  not one conclusively presumed to be disabling, the evaluation proceeds to the

13  fourth step, which determines whether the impairment prevents plaintiff from

    performing work which was performed in the past. If a plaintiff is able to perform

14  previous work, that plaintiff is deemed not disabled. 20 C.F.R. §§

15  404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, plaintiff's residual capacity

16  (RFC) is considered. If plaintiff cannot perform past relevant work, the fifth and

    final step in the process determines whether plaintiff is able to perform other work

17  in the national economy in view of plaintiff's residual functional capacity, age,

18  education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v),

19  416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

        The initial burden of proof rests upon plaintiff to establish a *prima facie* case

ORDER - 3

of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once plaintiff establishes that a physical or mental impairment prevents the performance of previous work. The burden then shifts, at step five, to the Commissioner to show that (1) plaintiff can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

## STANDARD OF REVIEW

Congress  has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-02 (9th Cir. 1989). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebreeze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980).

It is the role of the trier of fact, not this Court, to resolve conflicts in

evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## ALJ'S FINDINGS

ALJ Sherry found Plaintiff was insured through December 31, 2006 (Tr. 23, 25). At step one he found Plaintiff did not work at SGA levels after she applied for benefits (Tr. 25). At step two, he found she suffers from undifferentiated somatoform disorder; malingering; chronic pain syndrome; fibromyalgia and migraine headaches, impairments that are medically determinable but nonsevere (Tr. 26). Alternatively, the ALJ found even if Plaintiff's impairments were deemed severe, they do not alone or in combination meet or equal the severity of any Listed impairment (Tr. 35). Again assuming severe impairments, the ALJ opined Plaintiff can perform a range of light work (Tr. 36). The ALJ found Plaintiff less than fully credible (Tr. 28-34). At step four, he found she is capable of performing her past relevant work as a cashier and sales clerk (Tr. 36). The ALJ concluded Plaintiff was not disabled from onset January 2, 2003, through date of the decision, November 4, 2011 (Tr. 37).

## ISSUES

With respect to mental limitations, Plaintiff alleges the ALJ failed to properly credit the March 2009 opinion of examining psychologist John Arnold,

Ph.D. ECF No. 16 at 10-13, 15. With respect to physical limitations, Plaintiff alleges the ALJ failed to properly weigh the February 2009 opinion of examining doctor Robert Rose, M.D., and the records of treating doctor Roger Woodruff, M.D. ECF No. 16 at 13-15. The Commissioner responds that the ALJ applied the correct legal standards and the decision is supported by substantial evidence. She asks the court to affirm. ECF No. 18 at 15.

**DISCUSSION**

*A. Psychological limitations*

Plaintiff alleges the ALJ should have given more credit to the opinion of Dr. Arnold, a psychologist who evaluated her, than Ronald Klein, Ph.D., who testified at the hearing. ECF No. 16 at 10-12. The Commissioner responds that the ALJ's reasons for failing to credit Dr. Arnold's contradicted opinions are specific, legitimate and supported by substantial evidence. ECF No. 18 at 5-9, 13-15.

Dr. Arnold evaluated Plaintiff in March 2009. On Axis I, he diagnosed undifferentiated somatoform disorder, rule out somatization disorder, major depression (recurrent, severe), generalized anxiety disorder and rule out cognitive disorder. On Axis II he diagnosed borderline intellectual functioning (by prior testing in 2007) and personality disorder NOS, with borderline and dependent features (Tr. 496). He assessed numerous moderate, marked and extreme limitations (Tr. 498-99).

The ALJ considered the opinions of other examining and reviewing psychologists when he weighed Dr. Arnold's opinion. He considered the August 2007 opinion of Jay Toews, Ed.D. (Tr. 344-50). Dr. Toews notes test scores are well below expectations, "and are consistent with a high probability of malingering" (Tr. 348). Dr. Toews observes results are questionably valid. Plaintiff appeared to make little effort during testing. He diagnosed malingering, highly probable, and notes three rule out diagnoses. He was unable to assess functioning

ORDER - 6

"due to malingering indicators" (Tr. 348, 350).

The ALJ considered testifying expert Dr. Klein's opinion. Dr. Klein reviewed the record, including Dr. Arnold's report. He diagnosed undifferentiated somatoform disorder and malingering, and opined Plaintiff has no severe mental impairment (Tr. 88, 95, 101, 103). Dr. Klein opined Arnold's test results showed highly exaggerated responses, three of four scores on the F scale of the MMPI point to malingering, and he saw no basis for the extreme limitations Dr. Arnold assessed (Tr. 91-92). Klein notes in March 2011 examining psychologist James Bailey. Ph.D., observed "some evidence of malingering currently" (Tr. 93-94, 636, 639).

There is no evidence of ongoing mental health counseling or treatment despite allegedly severe mental health symptoms (Tr. 31).

The ALJ also rejected assessed extreme, marked and moderate limitations because Dr. Arnold's report is internally inconsistent. As an example, Dr. Arnold assessed an *extreme* (no useful ability to function in this area) limitation in the ability to perform activities within a schedule, yet he notes Plaintiff was on time for her appointment, as she was with numerous other appointments (Tr. 347 494, 498). An ALJ may properly reject any opinion that is brief, conclusory and inadequately supported by clinical findings. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). The ALJ rejected Arnold's assessments because they were at least partly based on Plaintiff's unreliable self-reporting [discussed below]. An ALJ may properly reject opinions that are based on unreliable self-reporting. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

*B. Credibility*

To aid in weighing the conflicting medical evidence, the ALJ evaluated Plaintiff's credibility. Credibility determinations bear on evaluations of medical evidence when an ALJ is presented with conflicting medical opinions or

ORDER - 7

inconsistency between a claimant's subjective complaints and diagnosed condition. *See Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005). It is the province of the ALJ to make credibility determinations. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). However, the ALJ's findings must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reason for rejecting the claimant's testimony must be "clear and convincing." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).

Plaintiff does not challenge the ALJ's negative credibility assessment, making it a verity on appeal. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n. 2 (9th Cir. 2008). The ALJ notes there is evidence of drug seeking behavior and prescription noncompliance (Tr. 28, 337, 378, 387, 443, 445, 483, 521, 526 (Dr. Woodruff notes he discussed the ongoing need to minimize medication consumption), 527, 531, 584, 739-40 (ER doctor calls Dr. Woodruff and learns he is considering dismissing Plaintiff from his clinic due to pain management issues; Woodruff asks that no further narcotic pain medication be prescribed); 756, 784-85). There is evidence of alcohol abuse (Tr. 28, 521, 542, 636).

In addition, (1) Plaintiff made little effort during testing, was uncooperative with examinations, and gave vague histories; (2) there is no objective medical evidence supporting the severity of alleged symptoms; (3) the lack of consistent medical treatment and compliance with treatment is inadequately explained or unexplained; (4) statements are inconsistent with medical records and (5) there is evidence of malingering (Tr. 28-34).

Even if the evidence of malingering is discounted, the ALJ's reasons are nonetheless clear, convincing and supported by the record.

Plaintiff was uncooperative with physical examinations by both Drs. Rose

ORDER - 8

and Young. She is noted to give little effort during psychological evaluations by Drs. Toews and Bailey (Tr. 348, 472-73, 639, 802). No corroborating evidence clearly establishes IC caused more than minimal impact on functioning for at least twelve months. Although the basis for diagnosing fibromyalgia is contradictory, the ALJ gave Plaintiff the benefit of the doubt and treated it as a medically determinable impairment (Tr. 111, 117, 472).

In August 2008 Plaintiff refused follow up medical treatment for CI. In 2009 she noted she had no mental health treatment since her teens (Tr. 445, 494). Plaintiff inconsistently told Dr. Rose she was diagnosed with IC in 1994. She told Dr. Arnold it was 1996 (*cf*. Tr. 470 *with* Tr. 492). There is considerable evidence of malingering (Tr. 348, 350, 636).

Drug seeking behavior may be evidence of "a tendency to exaggerate pain." *See Edlund v. Massanari*, 253 F. 3d 1152, 1157 99th Cir. 2001). Failure "to give maximum or consistent effort" during medical evaluations is "compelling" evidence that the claimant is not credible. Proper factors also include inconsistencies in claimant's statements and inconsistencies between statements and conduct. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). See *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005)(lack of consistent treatment is a factor the ALJ may properly consider); *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1040-41 (9th Cir 2003) (holding that the ALJ may reject the claimant's testimony "upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so")).

*C. Physical limitations*

Plaintiff alleges the ALJ erred by finding she is capable of a range of light work. She alleges that, had the opinions of Drs. Rose and Woodruff been properly credited, the ALJ would have found she is disabled. ECF No. 16 at 13-15. The Commissioner answers that the ALJ properly relied on the opinion of another

ORDER - 9

examining doctor, Ken Young, D.O., and the testifying doctor, Dr. Bailey, as well as the rest of the record. ECF No. 18 at 6-7, 9-10, 12-13.

The Commissioner is correct.

Dr. Rose evaluated Plaintiff February 6, 2009 (Tr. 470-81). He notes the most significant complaint is interstitial cystitis (IC) "diagnosed apparently in 1994." DR. Rose points out there is no corroborating medical source data to support IC,  although frequency, urgency and lower abdominal discomfort are noted. Plaintiff complains of generalized pain syndrome. Dr. Rose observes there is no associated laboratory data which would indicate inflammatory markers or other metabolic circumstances as possible etiologies. Plaintiff can walk less than 50 feet, sit less than 30 minutes and standing is "indeterminate." She does not drive. She cannot get on the exam table. Dr. Rose notes Plaintiff's "degree of functional complaints renders the medical source statement [Rose completed] largely invalid."  (Tr. 470-73, 560).

Dr. Woodruff was Plaintiff 's primary care physician from about 2000 to 2010 (Tr. 314, 326). Plaintiff alleges Dr. Woodruff consistently diagnosed chronic CI, classic migraine, fibromyalgia, IBS and low back pain. She seems to imply the ALJ should have found these impairments severe because they were diagnosed by a treating doctor. ECF No. 16 at 13. The Commissioner answers that a diagnosis may establish a medically determinable impairment, but does not alone establish an impairment is severe. A claimant must also show the impairment caused more than mild limitations, that is, a claimant must demonstrate "functional limitations stemming from her impairments" that prevent performing substantial gainful activity and last at least twelve months. Moreover, the Commissioner continues, any error at step two is harmless because the ALJ made alternative findings and continued through the sequential evaluation to step four. ECF No. 18 at 10-11.

Dr. Woodruff's records do not necessarily support Plaintiff's allegations. In

March 2009 Dr. Woodruff observes: "General body tenderness on even light touch in multiple areas including and beyond usual trigger points for fibromyalgia." (Tr. 528). In September 2010 he notes she is unable "to tolerate PT and all other referrals have proven fruitless. Rheumatology won't see her because of [a] missed appointment in the past. I can think of no other options not already tried." (Tr. 772). In October 2010 Plaintiff reported Dr. Woodruff wanted her to find another provider. He said he would no longer prescribe narcotics (Tr. 714, 727). However, he treated her from December 2010 through March 2011 (Tr. 730-42).

The record shows activities exceeding assessed dire limitations and complaints. Plaintiff has indicated she is unable to do any cooking or cleaning. She needs help getting in the bath about once a week, and with washing and brushing her hair. She spends her days sleeping or laying on the couch (Tr. 298-300, 684, 707, 816-18). However, in August 2009 activities included lifting heavy moving boxes and having sex in the bathtub. In September 2010 Plaintiff was shopping with her daughter, carrying her purse and several shopping bags, when she apparently strained her back (Tr. 542, 545, 574, 599, 602, 684, 768). In October 2010 she was noted to be able to groom herself unaided, with or without using assistive devices.

Agency reviewing doctor Howard Platter, M.D., opined in December 2009 that the evidence after August 2009 "does not show frequent medical intervention for migraines. [It] [d]oes appear claimant continues seeking addictive pain and anti-anxiety medications, however" (Tr. 593).

When he weighed the evidence the ALJ considered Dr. Young's May 2011 opinion (Tr. 32, 802-13). Dr. Young was unable to assess Plaintiff's ability to lift and carry because she was noncompliant with testing (Tr. 802). He observes that when distracted, no true trigger points for fibromyalgia were elicited. She brought a walker [that had not been prescribed] to the exam but did not need it. Her gait

ORDER - 11

was abnormal but in a "psychiatric bizarre functional way [rather] than [due to] any true medical difficulty" (Tr. 811-12). Dr. Young found no true or obvious neurological or orthopedic findings. He opined Plaintiff has no limitations in walking and sitting (Tr. 813).

The ALJ considered the testimony of Joselyn Bailey, M.D. She opined that no Listings are met. She testified the record contains no trigger point verifications that are necessary to diagnose fibromyalgia. Dr. Bailey testified she was unable to state, to a medical probability, that Plaintiff has severe physical impairments. Objective data, including a 2010 MRI, does not support the subjective complaints (Tr. 110-17).

With respect to Dr. Rose's February 2009 opinion, the ALJ accurately observes "claimant's performance at this examination related to the receipt of benefits is completely at odds with her abilities at other medical appointments. In September 2009 she was moving all extremities well, strength was 5/5 diffusely and there was no tremor activity." (Tr. 29, *comparing* Tr. 470-73 *with* Tr. 584). During Dr. Rose's exam, Plaintiff had tremors whenever she was asked to perform movements. Significantly, Dr. Rose opined his own medical source statement was largely invalid due to Plaintiff's lack of cooperation with the exam (Tr. 473).

Plaintiff alleges the ability to secure in-home assistance (from assessment October 13, 2010 to termination October 26, 2010) helps establish the severity of her impairments and limitations. However, Plaintiff was the primary source of information for making this determination (Tr. 645, 709). As indicated, she  was found less than fully credible.

The ALJ properly weighed the evidence. Any error at step two is clearly harmless because the ALJ made alternative findings and proceeded through the remaining steps of the sequential evaluation.

//

ORDER - 12

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

**CONCLUSION**

After review the Court finds the ALJ's decision is supported by substantial evidence and free of legal error.

**IT IS ORDERED**:

1. Defendant's motion for summary judgment, **ECF No. 18**, is **granted.**

2. Plaintiff's motion for summary judgment, ECF No. 16, is denied.

The District Executive is directed to file this Order, provide copies to counsel, enter judgment in favor of defendant, and **CLOSE** the file.

DATED this 30th day of June, 2014.

_s/James P. Hutton_

JAMES P. HUTTON

UNITED STATES MAGISTRATE JUDGE

ORDER - 13